

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
500 W. Lanier Ave.
Suite 908
Fayetteville, GA 30215
*Tel:* 470.878.0785

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 14th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

June 5, 2020

The Honorable Ellen L. Hollander
United States District Court for the District of Maryland
101 W. Lombard St., Chambers 5B
Baltimore, MD 21201

   RE: *Amador, et al. v. Mnuchin, et. al.*
      1:20-cv-01102-ELH

Dear Judge Hollander:

Pursuant to the Court's May 14, 2020 order, Dkt. 30, Plaintiffs *Ivania Amador, et al.,* submit this letter in response to the United States letter setting forth grounds for dismissing plaintiffs' suit under Fed. R .Civ. P. 12(b).

      Respectfully submitted,

 */s/ Robert P. Newman*
Robert P. Newman, MBA, Esq.
*Attorney & Counselor At Law*
801 Wayne Avenue
Suite 400
Silver Spring, MD 20910
Office: 301.892.2713
Fax: 301.883.1533
Text: 301.786.3793
rnewman@rpnewmanlaw.com

MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND

 */s /Nina Perales*
Nina Perales (Tex. Bar No. 24005046)*

Fátima Menéndez (Tex. Bar No. 24090260)*
Samantha Serna (Tex. Bar No. 24090888)*
110 Broadway, Suite 300
San Antonio, TX 7820
Telephone: 210.224.5476
Facsimile: 210.224.5382
nperales@maldef.org

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
Thomas A. Saenz (CA Bar No. 159430 )**
Belinda Escobosa (CA Bar No. 214178)*
Andres Holguin-Flores (CA Bar No. 305860)*
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
bescobosa@maldef.org

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
Andrea Senteno (NY Bar No. 5285341)*
1016 16th Street NW, Suite 100
Washington, DC 20036
Phone: (202) 293-2828
Facsimile: (202) 293-2849
 asenteno@maldef.org

*Admitted *pro hac vice*
*Application for admission *pro hac vice* forthcoming

Defendants concede that the challenged provisions of the CARES Act exclude Plaintiffs from eligibility for recovery payments because Plaintiffs are married to, and file their taxes jointly with, spouses who lack a social security number ("SSN"). Dkt. 32 at 1–2. Plaintiffs properly alleged that this exclusionary policy violates their constitutional rights.

**1. This Court Has Subject Matter Jurisdiction over Plaintiffs' Claims.**

Defendants' argument that this Court lacks subject matter jurisdiction because Plaintiffs must proceed through refund claims under 26 U.S.C. § 7422 misunderstands the nature of Plaintiffs' suit. Plaintiffs do not seek refunds; rather, they ask for declaratory and injunctive relief that invalidates 26 U.S.C. § 6428(g)(1)(B) as unconstitutional. *See* Dkt. 31 at 20. This Court has subject matter jurisdiction over those claims: 5 U.S.C. § 702 provides "a broad waiver of sovereign immunity for all nonmonetary claims against federal agencies and their officers." *Fuller-Deets v. Nat'l Insts. of Health*, No. GJH-18-3175, 2020 WL 230894, at *6 (D. Md. Jan. 14, 2020) (citing cases from Third, Fourth, Ninth, and D.C. Circuits); *e.g.*, *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006); *see* 5 U.S.C. § 702. Defendants do not dispute that, as this suit seeks equitable relief from federal agencies and officers, *see* Dkt. 31 at 5–6, 20, this waiver applies unless some other statute "forbids the relief which is sought" by Plaintiffs. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702); *see* Dkt. 32 at 3. The sole dispute, then, concerns whether 26 U.S.C. § 7422, the only statute that Defendants cite as potentially foreclosing Plaintiffs' suit, applies.

Section 7422 does not govern this case because Plaintiffs do not seek tax refunds. The provision covers only suits "*for the recovery of*" taxes, penalties, or sums "assessed or collected." 26 U.S.C. § 7422(a) (emphasis added); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 7 (2008) (emphasizing importance of following § 7422's language

1

closely). Courts—including the Fourth Circuit—have taken this language at face value, holding that "[§] 7422(a) does not allow for prospective relief" and does not apply to "claims for declaratory and injunctive relief"; instead, § 7422 governs only requests for "monetary relief." *King v. Burwell*, 759 F.3d 358, 366–67 (4th Cir. 2014), *aff'd*, 135 S. Ct. 2480 (2015); *accord Cohen v. United States*, 650 F.3d 717, 731–32 (D.C. Cir. 2011) (en banc) (§ 7422 did not foreclose suit challenging IRS procedures because "§ 7422(a) would not provide Appellants the equitable relief they seek."); *cf. Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996) (emphasizing that "[p]laintiff's claim for injunctive relief [was] the essence of his complaint"). In *Burwell*, the Fourth Circuit concluded that § 7422 was inapplicable to a challenge to an IRS rule that affected the plaintiffs' tax liability because the suit sought only equitable relief, not a monetary refund. *See* 759 F.3d at 366–67. Plaintiffs' claims are similar here: Plaintiffs challenge the statute's constitutionality and seek equitable relief, rather than any monetary remedy.[1] *See* Dkt. 31 at 20. "Even if [Plaintiffs] are entirely successful," *Cohen*, 650 F.3d at 731, no payments would issue without subsequent administrative process by Defendants.

The cases cited by Defendants underscore the principle that § 7422's applicability turns on the remedy sought by the plaintiffs. Defendants cite no case requiring plaintiffs who seek only declaratory and injunctive relief to file an action under § 7422: rather, each cited decision emphasizes that its respective plaintiffs sought monetary relief. *E.g.*, *Clintwood*, 553 U.S. at 4.

The purpose of § 7422 also shows the provision's inapplicability to Plaintiffs' claims. In requiring refund-seekers first to file an administrative complaint, Congress aimed to "'insure an

---

[1] In fact, plaintiffs could not bring this action through § 7422 refund claims. A refund claim must "set forth in detail" the exact grounds upon which the refund is sought. 26 C.F.R. § 301.6402-2(b)(1); *see also United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272 (1931) (requiring notice of the amount sought). Because Plaintiffs do not seek refunds, they do not set out the monetary amounts sought, and even if Plaintiffs prevail, Defendant IRS would calculate the specific amounts, if any, owed to Plaintiffs based on the information in their tax returns.

2

orderly administration of the revenue,' to provide that refund claims are made promptly, and to allow the IRS to . . . correct[] conceded errors." *Clintwood*, 553 U.S. at 11 (quoting *Felt & Tarrant Mfg. Co.*, 283 U.S. at 272). Application of § 7422 in the instant case serves none of those objectives. Forcing Plaintiffs to bring identical constitutional claims one by one will not create a more "orderly" system, but a more piecemeal one. Applying § 7422 is unnecessary for encouraging prompt claims here, where Plaintiffs have already done everything required of other eligible individuals seeking recovery payments. *See* Dkt. 31 ¶ 41. Moreover, administrative claims would be futile: § 6428(g)(1)(B) binds Defendants in any administrative proceeding, giving the IRS no opportunity "to . . . correct[] conceded errors." *Clintwood*, 553 U.S. at 11.

**2. Plaintiffs Have Standing to Bring Their Claims.**

"[W]hen standing is challenged on the pleadings, [the court] accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240 (4th Cir. 2019) (internal quotation omitted). Although Defendants argue that Plaintiffs have suffered no injury, Plaintiffs' complaint establishes at least three distinct injuries sufficient to confer standing.

First, despite Defendants' argument to the contrary, the inevitable denials of any attempts Plaintiffs ultimately make to claim CARES Act credits on their 2020 tax returns create an injury in fact that gives Plaintiffs standing to sue. An "imminent" injury suffices to confer standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Where future government action will "inevitabl[y]" produce some harm, the party that will experience the injury need not wait for the action to occur before filing suit. *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 n.3 (4th Cir. 2003); *see, e.g.*, *Curtis*, 915 F.3d at 241 (requiring only "realistic danger" of injury (internal quotation omitted));

3

*Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (recognizing injury in fact where inevitable errors by poll workers would harm political organizations' members). Plaintiffs already have not received recovery payments because § 6428(g)(1)(B) makes them ineligible. Absent an injunction, § 6428(g)(1)(B) will inevitably require Defendants to deny any attempts by Plaintiffs to claim CARES Act credits. *See* Dkt. 31 ¶¶ 33–43 (alleging that § 6428(g)(1)(B) renders Plaintiffs categorically ineligible for recovery payments).[2] Defendants concede as much in their motion. *See* Dkt. 32 at 5–6 (acknowledging that Plaintiffs are not eligible for recovery payments absent a change in their circumstances, such as one spouse's becoming a member of the Armed Forces).

Second, the additional hurdles that § 6428(g)(1)(B) forces Plaintiffs, but not other eligible individuals, to overcome in order to access recovery payments also create an injury in fact. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, . . . the denial of equal treatment" constitutes an injury in fact. *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014); *Stone v. Trump*, 400 F. Supp. 3d 317, 347 (D. Md. 2019) (holding that, even if waiver available, ban on transgender military enlistment and service injured plaintiffs because of unequal barriers to enlistment). Plaintiffs have properly alleged, and Defendants do not dispute, that they took all the steps required of other eligible individuals in order to receive recovery payments. *See* Dkt. 31 ¶¶ 33–43. Defendants further acknowledge that, in order to obtain recovery payments, Plaintiffs would need to make additional efforts—for instance, enlistment in

---

[2] The certainty of denial distinguishes this case from those relied upon by Defendants, which emphasized that the IRS might decline to audit or seek penalties from the plaintiffs. *See, e.g.*, *Coon v. Wood*, 160 F. Supp. 3d 246, 251 & n.2 (D.D.C. 2016). By contrast, the IRS would not have discretion to avoid injuring Plaintiffs: the challenged provision would categorically prohibit issuance of recovery payments. Plaintiffs thus face imminent, inevitable harm.

4

the military—not required of other eligible individuals. *See* Dkt. 32 at 5–6 (citing 26 U.S.C. § 6428(g)). Plaintiffs thus must overcome greater barriers than other eligible individuals to access a benefit. These extra requirements create an injury in fact.

Third, even if Defendants were correct in suggesting that Plaintiffs may eventually receive recovery payments despite the requirements of § 6428(g)(1)(B)—and Defendants are not—the delay in receiving those payments caused by the challenged provision would still represent an injury in fact. Delay in processing a benefit application or in distributing a benefit constitutes a distinct injury in fact.[3] *See Covenant Media of S.C. v. City of N. Charleston*, 493 F.3d 421, 428–29 (4th Cir. 2007); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (Posner, J.). The economic devastation caused by the current pandemic and the resulting urgency of prompt recovery payments make this injury particularly severe. Plaintiffs have properly alleged that they took all actions ordinarily required to receive recovery payments and that, but for § 6428(g)(1)(B), Plaintiffs would already have received the funds. *See* Dkt. 31 ¶¶ 33–43. Defendants do not disagree. Dkt. 32 at 1–2. Yet, even if Plaintiffs eventually obtain payments without this Court's intervention—which they will not—Plaintiffs' complaint demonstrates that § 6428(g)(1)(B) will have delayed their receipt of recovery payments, depriving them of the time value of the payments and of the use of the funds during an economic crisis. *See* Dkt. 31 ¶¶ 27–30, 57–59 (describing Plaintiffs' immediate financial need); *see also* 26 U.S.C. § 6428(f)(3)(A) (requiring that payments issue "as rapidly as possible"). Every moment of delay in payment issuance injures Plaintiffs. In light of the multiple injuries caused by the challenged provision and redressable by an injunction, Plaintiffs have standing to sue.

---

[3] Moreover, delay in processing a benefit application still constitutes an injury in fact even where, as here, denial is certain. *See Covenant Media of S.C. v. City of N. Charleston*, 493 F.3d 421, 428–29 (4th Cir. 2007). This injury thus exists regardless of whether Defendants are correct in asserting that Plaintiffs may eventually receive payments.

### 3. Plaintiffs Adequately Pleaded a Violation of Their Fifth Amendment Rights

A Rule 12(b)(6) motion "does not . . . resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotations omitted). Plaintiffs' claims need only state "plausible" causes of action to survive. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants' arguments for dismissal fail first because they rely on an unduly constrained interpretation of the right to marriage. The right to marriage extends beyond the act of entering into the marriage contract. The right to marriage is "fundamental" and protects an "enduring bond" through which "two persons together can find other freedoms, such as expression, intimacy, and spirituality." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2599 (2015); *see also id.* at 2593 (observing that rights like marriage "allow persons . . . to define and express their identity"); *United States v. Windsor*, 570 U.S. 744, 769 (2013) (invalidating federal law that singled out same-sex married couples for different treatment with the result that the plaintiff paid higher estate taxes). *Obergefell* described "four principles and traditions" underlying the right, with its discussion of each one contemplating a longer-term liberty interest than the crabbed approach offered by Defendants. 135 S. Ct. at 2599. All of these factors establish marriage as a long-term relationship within and through which individuals maintain the fundamental right "to define and express their identit[ies]." *Id.* at 2593. Plaintiffs' complaint adequately alleges that, by interfering with Plaintiffs' protected ability to engage in this form of self-definition and self-expression, § 6428(g)(1)(B) burdens their fundamental right to marriage.

Plaintiffs allege that § 6428(g)(1)(B) violates their substantive due process rights because it "threatens Plaintiffs' freedom of choice in personal matters related to marriage and family, including the sanctity of Plaintiffs' interest in defining their families though personal choice."

Dkt. 31 ¶ 78. Plaintiffs further allege that § 6428(g)(1)(B) violates their equal protection rights because it burdens "Plaintiffs' fundamental right to marriage in a way that is incompatible with requirements of equality." Dkt. 31 ¶ 91. Plaintiffs have thus adequately pleaded that Section 6428(g) of the CARES Act substantially interferes with the personal "liberty . . . to define and express their identity," *Obergefell*, 135 S. Ct. at 2599–2601; *United States v. Windsor*, 570 U.S. 744, 763 (2013) (observing that married couples "define themselves by their commitment to each other"). Because § 6428(g)(1)(B) burdens a fundamental right, it is subject to strict scrutiny. *Bostic*, 760 F.3d at 375; *see Obergefell*, 135 S. Ct. at 2599 (holding that right to marriage is "fundamental").

Defendants' argument that Plaintiffs challenge discrimination on the basis of *marital status* is a straw man; Plaintiffs challenge discrimination on the basis of whom they choose to marry, not discrimination based on whether they are married or unmarried. *See* Dkt. 32 at 6 ("[T]he CARES Act distinguishes based on marital status."). As a result, the cases on which Defendants rely are inapposite. *See, e.g.*, *Califano v. Jobst,* 434 U.S. 47, 54 (1977) (upholding federal statute that generally terminated an individual's benefits upon marriage); *Druker v. Comm'r*, 697 F.2d 46 (2d Cir. 1982) (upholding the assessment of a higher income tax rate for a married couple); *Mapes v. United States*, 576 F.2d 896 (Ct. Cl. 1978) (upholding tax provision under which married plaintiffs incurred greater personal income tax liabilities than they would if unmarried). Similarly, *Zablocki v. Redhail*, 434 U.S. 374 (1978), did not address discrimination against married persons on the basis of whom they chose to marry.[4]

---

[4] *Schinasi v. Comm'r*, 53 T.C. 382 (1969), also does not control here. *Schinasi* upheld as reasonable a tax provision that prohibited nonresident aliens from filing joint tax returns because "nonresident aliens are taxed upon a different basis from residents, [and] it is impossible to compute an aggregate income for the purposes of a joint return if either spouse is a nonresident alien for any portion of the taxable year." *Id*. at 384. Defendants here do not argue that Plaintiffs and their spouses are subject to different tax rates.

7

Because it burdens the fundamental right to marriage, § 6428(g)(1)(B) is subject to strict scrutiny, which it cannot survive. Even if it were appropriate at the motion-to-dismiss stage to delve into Defendants' proffered reasons for their discriminatory policy (and it is not), § 6428(g)(1)(B) cannot survive even rational basis scrutiny. Plaintiffs allege that Section 6428(g)(1)(B) "identif[ies] a subset of state-sanctioned marriages and make[s] them unequal[, and its] principal purpose is to impose inequality, not for other reasons like governmental efficiency." *Windsor*, 570 U.S. at 772. Defendants' asserted justification, that Congress enacted § 6428(g)(1)(B) to "further its policy goal of providing the credit only to individuals authorized to work in the United States, and not to ineligible individuals," rings hollow. Dkt. 32 at 9. Defendants concede that "Congress generally precluded credit claims submitted by individuals without SSNs regardless of their filing status." Dkt. 32 at 9; *see also* § 6428(g)(1) (limiting CARES Act tax credits to "eligible individual[s with a] valid identification number") There is no need for the addition of § 6428(g)(1)(B) other than to penalize the spouse of an individual without a SSN. Thus, Defendants' offer "no legitimate purpose [that] overcomes the purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity." *Windsor*, 570 U.S. at 775.[5]

## 4. Plaintiffs Adequately Pleaded a Violation of Their First Amendment Rights

Contrary to Defendants' argument, *see* Dkt. 32 at 9-10, the First Amendment protects speech on tax forms. "[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (striking down statute regulating use of pharmacy records as burdening protected expression).

---

[5] Defendants suggest that Plaintiffs can avoid discrimination under § 6428(g)(1)(B) by filing "separately for any given year[.]" Dkt. 32 at 8. This argument ignores the fact that the burden of filing married and separately, both in terms of delay and paying a higher tax rate, is itself discriminatory. *See e.g. Lewis v. Thompson*, 252 F.3d 567 (2d Cir. 2001) (concluding that requiring separate versus automatic enrollment was a burden).

Such speech "is not . . . unprotected by the First Amendment" even where it touches on "matters of purely private concern." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759–60 (1985) (internal quotation omitted). As Plaintiffs properly allege, their joint filing of tax returns "express[es] their lawful marriage and commitment to, and association with, their spouses." Dkt. 31 ¶ 85; *see Obergefell*, 135 S. Ct. at 2593 (including "express[ion of] identity" as core aspect of right to marriage).

The cases cited by Defendants do not contradict this point: those decisions acknowledged that tax returns could receive First Amendment protection, but held that the government had sufficiently strong interests to justify penalizing unlawful, frivolous returns. *See Khan v. United States*, 753 F.2d 1208, 1214–17 (3d Cir. 1985) (en banc) (acknowledging expressive value but finding that interest in "workable tax system" justified penalty for frivolous returns); *Franklet v. United States*, 578 F. Supp. 1552, 1556–57 (N.D. Cal. 1984) (same). In contrast, Plaintiffs do not challenge a penalty assessed against them for filing frivolous claims; rather, they challenge the government's denial of a benefit based on their accurate, lawful, and protected speech. *See* Dkt. 31 ¶ 84–87.

Section 6428(g)(1)(B) also impermissibly burdens Plaintiffs' freedom of association. Although Defendants argue that Plaintiffs have no constitutional right to "express their . . . association with their spouses in . . . jointly-filed federal tax returns," Dkt. 32 at 10, the Supreme Court has observed that the many government benefits and programs that take marriage into account—including "taxation"—"offer[] symbolic recognition" of a married couple's "union." *Obergefell*, 135 S. Ct. at 2601. In choosing to file jointly, then, a couple accepts this "symbolic recognition," expressing their association with and "commitment to their spouses." Dkt. 31 ¶ 84; *see also Obergefell*, 135 S. Ct. at 2600 (describing marriage as an "intimate association");

9

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–20 (1984) (recognizing that First Amendment protects freedom of intimate association). Filing jointly is therefore a protected expression of the couple's association.

As Plaintiffs' complaint properly alleges, *see* Dkt. 31 ¶¶ 84–87, such a penalty for protected speech and association unconstitutionally burdens Plaintiffs' First Amendment rights. "[D]iscriminatory denial of a tax exemption for engaging in speech is a limitation on free speech." *Speiser v. Randall*, 357 U.S. 513, 518 (1958) (striking down state law that withheld property tax exemption if property owners refused to sign loyalty oath); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[Government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . [including] speech or associations."). Plaintiffs thus adequately allege that conditioning the availability of recovery payments on their exercise of self-expression through speech and association in their tax filings violates their First Amendment rights.